■ In the Matter of REBECCA L. WILLIAMS, Appellant, v GERALD T. WILLIAMS, Respondent. (And Two Other Related Proceedings.) [936 NYS2d 334]—

Egan Jr., J.

In February 2002, the parties were awarded joint legal custody of their son (born in 2000) with primary physical custody to petitioner (hereinafter the mother) and extended visitation to respondent (hereinafter the father). Pursuant to the terms of the underlying order, the father had physical custody of the child on alternating weekends from Friday evening until Monday morning, as well as alternating Wednesdays through Fridays, and the parties shared holidays. Although the parties' relationship appears to have been somewhat contentious over the years—as evidenced by the number of prior violation petitions filed by the father—the child nonetheless enjoyed regular and meaningful access to both of his parents.

In November 2009, the mother commenced a modification proceeding seeking permission to relocate with the child from Broome County to North Carolina. The father opposed the move, cross-petitioned for, among other things, sole custody of the child and filed a violation petition. Following the fact-finding and *Lincoln* hearings, Family Court dismissed the parties' respective applications concluding, among other things, that the mother failed to demonstrate that the proposed move was in the child's best interest. This appeal by the mother ensued.

We affirm. As the party seeking to relocate, the mother bore the burden of demonstrating by a preponderance of the credible evidence that the proposed move would be in the child's best interest (*see Matter of Munson v Fanning*, 84 AD3d 1483, 1484 [2011]; *Matter of Sofranko v Stefan*, 80 AD3d 814, 815 [2011]). Relevant factors to consider include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements" (*Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *accord Matter of Vargas v Dixon*, 78 AD3d 1431, 1432 [2010]; *Matter of Solomon v Long*, 68 AD3d 1467, 1469 [2009]). Family Court's findings in this regard, if supported by a sound and substantial basis in the record, will not be disturbed (*see Matter of Hissam v Mancini*, 80 AD3d 802, 804 [2011], *lv dismissed and denied* 16 NY3d 870 [2011]; *Matter of Solomon v Long*, 68 AD3d at 1469).

Here, it is clear that the mother's primary motivation for the requested relocation is to be with her boyfriend, who now lives and works in North Carolina (*see Matter of Leach v Santiago*, 20 AD3d 715, 716 [2005], *lv denied* 6 NY3d 702 [2005]). Indeed, the mother stated more than once during the course of the hearing that she intended to move to North Carolina regardless of the outcome of these proceedings—even if her decision to relocate resulted in a transfer of physical custody to the father, whom she regarded as having numerous parental shortcomings. It also is clear that the proposed move does not result in an economic benefit for the mother or otherwise advance her career to any meaningful degree. Similarly, although the mother testified that there were many desirable schools in the community where her boyfriend had purchased a home, she failed to offer any

proof from which Family Court reasonably could conclude that the North Carolina school system represented a significant improvement over the child's current school system or that there was some compelling reason for uprooting the child from a school district that plainly was capable of meeting his needs (*see Matter of Sofranko v Stefan*, 80 AD3d at 816).* Further, while the mother was willing to offer the father extended periods of visitation at her expense, there is no question that permitting the child to relocate would result in a substantial disruption of the weekly interaction between the father and the child and would deprive the child of access to his extended family in the area (*see Matter of Munson v Fanning*, 84 AD3d at 1485). Accordingly, notwithstanding the fact that the mother has been the child's primary caregiver and that the child, in turn, has formed a positive relationship with the mother's boyfriend, we find ample support in the record for Family Court's determination that permitting the child to relocate to North Carolina would not be in his best interest.

Peters, J.P., Spain, McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

---

* Notably, the mother testified that she was very comfortable with the child's current school, where he was "an excellent student academically."