Rose, J.
Appeal from an order of the Family Court of Broome County (Connerton, J.), entered October 29, 2012, which dismissed petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of one child (born in 2010). Following the birth of the child, the couple resided together and, working opposite schedules, shared in her care. They separated in March 2011 and, in August 2011, pursuant to a stipulated order, agreed to joint legal custody, primary physical custody with the mother and parenting time with the father every other weekend from 12:00 p.m. on Saturday to 4:00 p.m. on Sunday.
In January 2012, when the mother and father had both been unemployed for a year, the mother approached the father and asked him about moving to Florida with her, the child and the child’s maternal grandmother, as the mother had been offered employment there. The father agreed and the parties left for Florida but, days later, the father decided against the move and returned to New York. Upon his return, the father commenced a custody proceeding, among others, and the mother then, among other things, commenced this proceeding to allow her to relocate. Following a hearing, Family Court dismissed the mother’s petition for relocation. The mother now appeals.
*1351 We affirm. The parent seeking to relocate with a child bears the burden to demonstrate, by a preponderance of the credible evidence, that the relocation would be in the best interests of the child (see Matter of Stetson v Feringa, 114 AD3d 1089, 1090 [2014]; Matter of Scheffey-Hohle v Durfee, 90 AD3d 1423, 1425 [2011], appeal dismissed 19 NY3d 876 [2012]). Factors to be considered in making such a determination include “ ‘each parent’s reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child’s future contact with the [non-moving] parent, the degree to which the [moving] parent’s and child’s life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the [non-moving] parent and child through suitable visitation arrangements’ ” (Rose v Buck, 103 AD3d 957, 958 [2013], quoting Matter of Sniffen v Weygant, 81 AD3d 1054, 1055 [2011], appeals dismissed 16 NY3d 886 [2011], 17 NY3d 884 [2011]; see Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]). Family Court is in the best position to make factual findings and credibility determinations and, therefore, its decision will not be disturbed when it is supported by a sound and substantial basis in the record (see Matter of Stetson v Feringa, 114 AD3d at 1090; Rose v Buck, 103 AD3d at 958).
Here, the testimony established that both parents were committed and had an emotional bond with the child, and Family Court found that, despite transportation challenges, the father had exercised most of his visitation time. While the mother’s desire to relocate to Florida in an effort to create economic opportunity is admirable, the record demonstrates that, at the time of the hearings, she was working as a hotel desk agent at slightly higher than minimum wage. While there was further testimony that the child enjoyed certain recreational opportunities and attended a local day care there, the record as a whole fails to establish “that relocation would substantially enhance the child’s economic, emotional or educational well-being” (Matter of Scheffey-Hohle v Durfee, 90 AD3d at 1428; see Matter of Stetson v Feringa, 114 AD3d at 1091; Rose v Buck, 103 AD3d at 961).
Furthermore, the record supports Family Court’s conclusion that relocation would have a negative impact on the quality and quantity of the child’s future contact with the father, particularly in light of the parties’ limited resources (see Rose v Buck, 103 AD3d at 960-961; Matter of Munson v Fanning, 84 AD3d 1483, 1485 [2011]). Despite the mother’s insistence that she *1352 would endeavor to provide the father with the same number of total hours of visitation each year, there is no doubt that he would be deprived of “ ‘regular and meaningful access to his child and, more to the point, that [the child] no longer will benefit from his consistent presence in her life’ ” (Rose v Buck, 103 AD3d at 960-961, quoting Matter of Scheffey-Hohle v Durfee, 90 AD3d at 1427).
Stein, J.E, McCarthy and Egan Jr., JJ., concur.
Ordered that the order is affirmed, without costs.